McCook Window Co., a Corporation, Plaintiff-Appellee, v. Hardwood Door Corporation, a Corporation, and Ashley T. Wright, Defendants-Appellants.

Gen. No. 49,301.

First District, Second Division.

September 29, 1964.

Benjamin Ordower, of Chicago, for appellants.

Essington, McKibbin, Beebe & Pratt, all of Chicago (Cyrus Mead III and Julian H. Hardy, of counsel), for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

This is an action for injunctive relief, for accounting, and for compensatory damages, and arises out of an agreement (the relevant provisions are hereinafter set forth) entered into by McCook Window Company, Hardwood Door Corporation, and Ashley T. Wright. The cause was referred to a master who heard testimony and made his report to the court. After overruling the exceptions of defendants to the master's report, the court approved the report and entered a decree enjoining defendants from violating paragraphs 5 and 7 of the agreement, and directing defendants to file an accounting. Defendants appeal.

Wright at all times was president, director, principal executive officer, and controlling shareholder of Hardwood which had been engaged in the retailing of windows, doors, screens, and door and window frames. Hardwood also began to build check rail win-

dows from unassembled parts. However, since this was a manufacturing rather than a retailing operation, the management of Hardwood caused McCook to be organized in the spring of 1954. At first McCook operated from the same premises as Hardwood but later moved to its present location in McCook, Illinois. Shortly after McCook was organized Wright became one of its principal stockholders and remained one until May 7, 1959, when he divested himself of all his stock in the company. On that same date McCook purchased, for $40,000, 435 shares of McCook stock owned by Wright. The agreement, likewise dated May 7, 1959, provided that the parties were to maintain the business relationship which existed prior to May 7, 1959; it also provided for certain restraints which were ancillary to the sale of stock by Wright. The two paragraphs which provided for the restraints and which are the basis of this suit are as follows:

"5. Hardwood agrees to continue to handle and purchase as it normally did in the past the various products manufactured and kept for sale by Mc-Cook and McCook agrees to make the same available to Hardwood, and Hardwood agrees not to handle or purchase any competing line of said products during the existence of this agreement, from the date hereof to the 10th day of April, 1964. In the event Hardwood makes purchases from any other competitor in violation of the terms hereunder, then McCook can at its option, forfeit as liquidated damages the balance, if any, due and owing by McCook to Wright under the terms of this agreement. Prices charged by McCook for such products must be reasonably competitive, otherwise Hardwood shall be relieved of its obligation to purchase such products which are not reasonably competitive. Hardwood agrees to co-

281

operate with McCook in the furtherance or promotion of newly designed products by McCook.

". . .

"7. Wright and Hardwood agree to and with McCook that they will not engage in the wholesale manufacturing, distributing or selling of exterior window frames and unit business within one hundred and fifty miles (150) radius from location of McCook, which is at Route #66 and B & O Railroad Overpass, McCook, State of Illinois, either directly or indirectly, either as an individual, employee, corporation, association, venture, or partnership, during the time McCook may be engaged in said business in said area."

Because it claimed that McCook's prices were not competitive, Hardwood began seeking products from other manufacturers. Meetings between McCook and Hardwood were held for the purpose of trying to work out their differences, but no solution could be found. In the summer of 1960 Hardwood began to purchase from McCook's competitors and also began to change the nature of its operation—it began to carry on assembly operations with parts purchased from McCook's competitors. On October 13, 1960 McCook filed suit against Hardwood and Wright, claiming that, by purchasing goods from McCook's competitors and by engaging in manufacturing operations, defendants had violated paragraphs 5 and 7 of the May 7, 1959 agreement.

Defendants contend that: (1) they did not handle and purchase a competing line of products and therefore did not violate the agreement; (2) they were relieved of their obligation to purchase products from plaintiff because the prices for said products were not reasonably competitive; (3) they did not engage in the wholesale manufacturing, distributing, or selling of exterior window frames and unit business with-

in 150 miles of plaintiff and therefore did not violate the agreement; (4) the requirement of paragraph 5 of the agreement that defendants handle and purchase plaintiff's products and not a competing line of products for five years is void as against public policy; and (5) the requirement of paragraph 7 of the agreement that defendants refrain from the wholesale manufacturing, distributing, or selling of products within a 150-mile radius of plaintiff's plant in McCook, Illinois as long as plaintiff is engaged in the same business in the same area is void as against public policy.

The first three grounds for reversal present questions which challenge the master's findings of fact and conclusions of law. We hold, however, that defendants are precluded from doing so because their abstract does not contain the requisite matters upon which such contentions can be resolved. Defendants failed to set out in full the master's findings of fact or any part of his conclusions of law; they also failed to set out the agreement which is the basis of this suit. The failure of defendants to set out objections to the master's report, which stand as exceptions to it, constitutes a damaging omission in the abstract; that omission alone precludes us from considering factual questions presented by defendants in their first three grounds for reversal. Appellate Court rule 6 provides that the abstract "need only be sufficient to present fully every error relied upon." The use of the word "only" does not change the meaning of the word "sufficient"; the abstract must present fully every error relied upon. The abstract of the record is the pleading of the appealing party in a court of review, and whatever is sought to be reviewed must be contained therein. City Nat. Bank & Trust Co. of Rockford v. Almond, 42 Ill App2d 314, 192 NE2d 297 (1963).

283

The court in Decatur Coal Co. v. Clokey, 332 Ill 253, 261, 163 NE 702 (1928), passed on the problem of an abstract which failed to set out the master's report and the objections thereto, and said:

> "Rule 14 of the rules of practice of this court requires that in all cases an appellant or plaintiff in error shall furnish a complete abstract of the record, . . . The abstract must be sufficient to present fully every error relied upon. The abstract filed in this case says: 'The master's report is not abstracted, for the reason that the findings in the decree follow it almost verbatim. It concludes that complainant . . . should be decreed to have full right, title and interest in the coal claimed by Clokey.' The condition of the record is such that no question of fact is open for review. The decree cannot be resorted to or take the place of the necessary report, objections and exceptions to preserve questions of fact for review. It is the result of all antecedent steps. . . . The decision of the chancellor on the exceptions is not open to review in this court as to any question of fact. Only questions of law are now proper for consideration upon the facts found in the decree."

In the case of Hamalle v. Kimmel, 224 Ill App 9 (1922), the abstract omitted the order of reference to the master, the report of the master, the objections to the report, the ruling on the objections, and the exceptions to the report. The court said (11): "This practically withdraws from our consideration all the questions of fact. . . . appellants should be deprived of any question upon the findings of the court as to the facts." Gribben v. Interstate Motor Freight System Co., 38 Ill App2d 123, 186 NE2d 100 (1962), is likewise in point. Because of defendants' failure to

284

file an abstract which satisfied rule 6, they deprived themselves of the opportunity to question the findings of fact, and we cannot consider their first three grounds for reversal which are basically factual questions. It remains to consider the questions of law presented by the complaint, answer, and decree.

■ Defendants' fourth ground for reversal is that the provisions of paragraph 5 of the agreement are void as against public policy and therefore unenforceable. Likewise we cannot consider this objection since no question as to the validity of paragraph 5 of the agreement was raised in the trial court; this objection is now being raised for the first time on appeal. It is clear that a defense may not be raised for the first time on appeal. Bryant v. Lakeside Galleries, Inc., 402 Ill 466, 84 NE2d 412 (1949); Bowman v. Pettersen, 410 Ill 519, 102 NE2d 787 (1952).

Finally defendants argue that the provisions of paragraph 7 of the agreement are void as against public policy and therefore unenforceable. This paragraph provides that defendants will not engage in the wholesale manufacturing, distributing, or selling of exterior window frames within a 150-mile radius of plaintiff's plant during the time plaintiff may be engaged in the same business in the said area.

In support of their position defendants cite a number of cases dealing with violations of the Sherman Anti-Trust Act and the Clayton Act. These cases are clearly inapposite because the problem at hand is governed by common law cases dealing with contracts in restraint of trade which are ancillary to the sale of a business or property. With respect to cases involving restraints ancillary to contracts of employment, there is a question as to whether such cases are authority in situations involving restraints ancillary to the sale of a business or property. Since a difference exists in the nature of the interests sought to

be protected in the case of an employer and that of a purchaser, decisions in one area cannot be of significant value or weight in the other. Northwest Side Lumber Co. v. Layton, 239 Ill App 82 (1925); Restatement, Contracts § 515, comment b (1932).

■ ■ The enforceability of a restraint ancillary to the sale of a business or property depends on the reasonableness of the restraint as to time and as to the extent of the territory; neither one is conclusive but both are important factors in the determination of the reasonableness of the restraint. Decker v. West, 273 Ill App 532 (1934). Since the duration of the restraint is only one factor in deciding whether a restraint is reasonable, the provision for an indefinite duration of the restraint is not, by and of itself, sufficient to render the agreement unenforceable. In Pelc v. Kulentis, 257 Ill App 213, 218 (1930), the court said:

> "It is to be noted that in each of the cases cited, the contract there in litigation contained a restriction unlimited as to time. While no opinion of a court of review in this State has turned upon the precise question, the general rule is that where a contract by which a person covenants not to engage in or carry on a particular business is limited as to territory and is reasonable and proper in other respects, the fact that the duration of the restriction is unlimited will not render the contract invalid, and this was true even according to the early rule. . . ."

Also in point are Ryan v. Hamilton, 205 Ill 191, 68 NE 781 (1903), and Storer v. Brock, 267 Ill App 138 (1932), affd, 351 Ill 643, 184 NE 868 (1933). On the other hand, if the uncertain duration of the restraint is unreasonable under the circumstances of the particular case, the restraint will not be upheld.

286

Tarr v. Stearman, 264 Ill 110, 105 NE 957 (1914). Stated differently, the rule is that the restraint, in order to be enforceable, must be limited to a reasonable time and to a reasonable territorial area, the reasonableness of the restraint being judged by the circumstances of the particular case.

■ The concept of reasonableness can be divided into three elements: the restraint as to time and as to territory must be necessary in its full extent for the protection of the purchaser, but must at the same time not be oppressive on the seller, and must not be injurious to the interests of the general public. Bauer v. Sawyer, 8 Ill2d 351, 134 NE2d 329 (1956); Pelc v. Kulentis, 257 Ill App 213 (1930); Anno, 45 ALR2d 77 (1956), 46 ALR2d 119 (1956).

■ First, in order that the restraint be reasonable for the purchaser, it must protect him in the enjoyment and possession of the good will of the property transferred to him, but the protection lasts only as long as the good will transferred lasts (Storer v. Brock, 351 Ill 643, 184 NE 868 (1933)), and can cover only that territory to which the good will extends (Tuzik v. Lukes, 293 Ill App 297, 12 NE2d 233 (1938), Harding v. American Glucose Co., 182 Ill 551, 55 NE 577 (1899)), and to which it might be reasonably expected to extend during the existence of the restraint (Decker v. West, 273 Ill App 532 (1934), General Bronze Corp. v. Schmeling, 208 Wis 565, 243 NW 469 (1932)). The good will of the business is primarily characterized by a personal relationship and specifically by the customer contacts which the former owner of the business was able to develop. This purchaser's need for protection exists so long as and covers as much territory as is necessary to prevent the seller from drawing away customers and suppliers from the purchaser if the seller were to reenter the same business in the restricted terri-

tory. Brandenburger v. Martin, 225 Ill App 439 (1922). Protection against the potential loss of these assets is the true test to be applied in determining the necessary duration and territorial extent of the restraint.

Second, the restraint as to the seller, in order to be reasonable, must not be unduly harsh or oppressive. The duration and territorial extent of the restraint are unreasonable if they impose on the seller a hardship much greater, relatively speaking, than the ensuing advantage to the purchaser. Since the seller, in determining the sale price of a business, usually includes therein the value of its good will, which value is enhanced by the agreement not to compete, the showing of a hardship must be substantial. Watson v. Ross, 46 Ill App 188 (1892).

Third, the restraint must be reasonable as to the general public. Bauer v. Sawyer, 8 Ill2d 351, 134 NE2d 329 (1956); Storer v. Brock, 351 Ill 643, 184 NE 868 (1933); American Strawboard Co. v. Peoria Strawboard Co., 65 Ill App 502 (1896).

In the case at bar paragraph 7 provides for a restraint that covers a 150-mile radius of plaintiff's plant in McCook, Illinois for an indefinite duration—as long as plaintiff is engaged in the same business in the same area. Applying the foregoing principles to the case at bar, we believe that in the present circumstances paragraph 7 does not provide for a reasonable time and territorial limitation. The unreasonableness in this case stems from the fact that the restraints are greater than necessary for the protection of plaintiff, the purchaser of the stock. There is no showing that the restraints are reasonably related to the protection of plaintiff in the enjoyment and possession of the good will of the business transferred to it; no showing that the restraints provided for are necessary to prevent defendants

288

from drawing away customers and suppliers from plaintiff if defendants were to resume the same business; no showing that plaintiff had customers as far away as 150 miles from its plant; no showing that if defendants resumed the wholesale manufacturing of exterior window frames at any time while plaintiff is engaged in the same business in the same area plaintiff would suffer more than if a stranger began to compete. We hold, therefore, that paragraph 7 of the agreement is void as an unreasonable restraint on trade. Pelc v. Kulentis, 257 Ill App 213 (1930).

Accordingly, that provision of the decree ordering that an injunction be issued to obtain enforcement of paragraph 5 is affirmed, that provision ordering an accounting with respect to violations of paragraph 5 is affirmed, that provision ordering that an injunction be issued to obtain enforcement of paragraph 7 is reversed.

Decree affirmed in part and reversed in part with directions.

BURKE, P. J. and BRYANT, J., concur.