No.  3--02--0925

____________________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

HEALTH PROFESSIONALS, LTD., )  Appeal from the Circuit Court

an Illinois corporation; )  of the 10th Judicial Circuit,

STEPHEN A. CULLINAN, M.D.; and )  Peoria County, Illinois,

THERESA M. FALCON-CULLINAN, )

M.D., )

)

Plaintiffs-Appellees, )

)

v. )  No. 02--CH--374

)

NORMAN JOHNSON, MD.; BRENDA J. )  

JOHNSON; and ADVANCED )

CORRECTIONAL HEALTHCARE, INC., )

an Illinois corporation, )  Honorable

)  John A. Barra,

Defendants-Appellants. )  Judge, Presiding.

____________________________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

____________________________________________________________________________________

Defendants Dr. Norman Johnson and Brenda Johnson (the Johnsons) and Advanced Correctional Healthcare, Inc. (ACH) appeal from an order of the circuit court granting a preliminary injunction prohibiting defendants from violating a noncompetition agreement.  Defendants assert that the agreement violates both the Illinois Procurement Code (30 ILCS 500/1--1 
et
 
seq
. (West 2000)) and the Illinois Antitrust Act (740 ILCS 10/1 
et
 
seq
. (West 2000)), and that its terms are unreasonably restrictive.  We affirm as modified.

Facts

Prior to April 18, 2002, plaintiff Health Professionals, Ltd. (HPL), a business providing managed healthcare services to jails and correctional facilities, was owned by plaintiffs Stephen Cullinan and Theresa Falcon-Cullinan (the Cullinans) and by the Johnsons.  On that date, the Cullinans agreed to purchase all outstanding shares of HPL owned by the Johnsons.  As part of the purchase agreement, contracts to provide healthcare services at certain jails and correctional facilities (the exempted facilities) were assigned by HPL to ACH.  Defendant Dr. Johnson established ACH around the time of the agreement to service the exempted facilities.  The exempted facilities were located in the Illinois counties of Coles, Knox, Lee, Livingston, Peoria and Woodford, as well as in Tippecanoe, Indiana and Kenosha County, Wisconsin.  The parties also executed a "Noncompetition, Nondisclosure and Nonsolicitation Agreement" (the noncompetition agreement) which stated in part:

"(a)  For the shorter of (i) a period of three years after the Closing or (ii) until an Assignment by Buyers:

(x)  Except with regard to services to inmates and personnel at the Exempted Facilities, neither Shareholder nor [ACH] will, directly or indirectly, engage or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing or control of, be employed by, associated with or in any manner connected with, or render services or advice or other aide to, or guarantee any obligation of, any Person engaged in or planning to become engaged in the business of managing and/or providing healthcare or healthcare related services to inmates and personnel at (A) jail facilities, prison facilities, juvenile facilities, Department of Correction facilities or other penal or correctional facilities of any kind located in the states of Illinois, Wisconsin and Missouri; (B) Department of Correction facilities in the state of Indiana; or (C) jail facilities, prison facilities, juvenile facilities, Department of Correction facilities or other penal or correctional facilities operated by Cornell Companies, Inc. *** 

(y)  Each Shareholder and [ACH] agrees not to, directly or indirectly, induce or attempt to induce any customer (other than the Exempted Facilities) to cease doing business with [HPL] or in any way interfere with the relationship between any such customer and  [HPL] if the Shareholders are prohibited under Section 4(a)(x) above from rendering health care services to such customer."

In July of 2002, a representative of ACH contacted various jails and correctional facilities in Illinois and Wisconsin, including customers of HPL, offering to provide healthcare services.  In addition, Dr. Johnson spoke with Cornell Companies concerning consulting work.  Plaintiff subsequently filed a complaint for damages and injunctive relief on July 26, 2002, followed by a motion for a preliminary injunction.  After a two-day hearing, the trial court granted a preliminary injunction prohibiting the defendants from violating the terms of the noncompetition agreement.  The evidence introduced at the preliminary injunction hearing will be presented as it becomes relevant to resolving the issues raised on appeal.

Analysis

Standard of Review

Whether the noncompetition agreement violates the Illinois Procurement Code or the Illinois Antitrust Act are questions of statutory interpretation which require neither factual determinations nor the exercise of judicial discretion.  Statutory construction is a question of law subject to 
de
 
novo
 review.  
Robidoux v. Oliphant
, 201 Ill. 2d 324, 775 N.E.2d 987 (2002).  On the other hand, "[w]hen the appellate court reviews the issuance of a preliminary injunction, the sole issue is whether the trial court abused its discretion."  
Harper v. Missouri Pacific R.R. Co.
, 264 Ill. App. 3d 238, 249, 636 N.E.2d 1192, 1201 (1994).  The abuse of discretion standard has specifically been applied in reviewing a preliminary injunction based on a noncompetition covenant.  See 
Central Water Works Supply, Inc. v. Fisher
, 240 Ill. App. 3d 952, 608 N.E.2d 618 (1993).

Illinois Procurement Code

Defendants first contend that the noncompetition agreement is void and unenforceable because it violates section 50-25 of the Illinois Procurement Code (Procurement Code) which provides:

"§50-25.  Inducement.  Any person who offers or pays any money or other valuable thing to any person to induce him or her not to bid for a State contract or as recompense for not having bid on a State contract is guilty of a Class 4 felony.  Any person who accepts any money or other valuable thing for not bidding for a State contract or who withholds a bid in consideration of the promise for the payment of money or other valuable thing is guilty of a Class 4 felony."  30 ILCS 500/50--25 (West 2000).

Despite plaintiffs' arguments to the contrary, we believe that, to the extent the noncompetition agreement prohibits defendants from bidding on contracts with the Illinois Department of Corrections, it violates the plain language of section 50--25.  Clearly, plaintiffs paid money and gave other valuable consideration to defendants to induce them to enter into the noncompetition agreement, which by its terms prohibits defendants from bidding on Department of Corrections contracts.  That the noncompetition agreement was only one part of the overall sale of defendants' interest in HPL does not alter its nature.  Although plaintiffs maintain that section 50--25 should not be read literally, where the language of a statute is unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature.  
Bridgestone/Firestone, Inc., v. Aldridge
, 179 Ill. 2d 141, 688 N.E.2d 90 (1997).  Plaintiffs' argument that section 50--25 should not be applied to restrictive covenants because doing so would impair the ability of business owners who have state contracts from selling their businesses is unavailing.  Only businesses which depend heavily on state business would be affected, and even those would simply have to adjust their asking price.  In any event, a court is not free, in the face of unequivocal statutory language, to read in exceptions, limitations, or conditions that the legislature did not express.  See 
Davis v. Toshiba Machine Co. v. America
, 186 Ill. 2d 181, 710 N.E.2d 399 (1999).  Therefore, we hold that the noncompetition agreement is void and unenforceable insofar as it purports to prohibit defendants from bidding on Illinois Department of Corrections contracts or any other contract with another state agency.

We do not, however, find that the entire noncompetition agreement is void.  The record indicates that many of HPL's clients are county jails, and the agreement prohibits defendants from providing healthcare services to those jails.  In 
Court Street Steak House, Inc. v. County of Tazewell
, 163 Ill. 2d 159, 164, 643 N.E.2d 781, 783 (1994), our supreme court stated that the Illinois Purchasing Act (30 ILCS 505/1 
et
 
seq
. (West 1992)) did not apply to a food service contract at a county jail because the Purchasing Act applied only to state agencies, not to units of local government such as counties.  When the Purchasing Act was repealed (see 30 ILCS 500/95--25 (West 1998)), most of its provisions were reenacted, with some modifications, in the Illinois Procurement Code, including the definition of "state agency" relied on in 
Court Street
.  Compare 30 ILCS 505/3 (West 1992) with 30 ILCS 500/1--15.100 (West 1998).  Accordingly, we believe that the Procurement Code, like the Purchasing Act, does not apply to county jails.  See 30 ILCS 500/1--5 (West 1998) (purpose of Procurement Code is to apply competitive bidding principles to contracts by or for any state agency); 1999 Ill. Att'y Gen. Op. 008 (exclusion from definition of "state agency" exempts entity from provisions of Procurement Code.)   Since the noncompetition agreement contains a severability clause which provides that the invalidity of any provision or term does not affect the remaining provisions or terms, we find that the agreement's prohibition against providing healthcare services to county jails or other entities that are not state agencies is unaffected by section 50--25 of the Procurement Code.  In addition, the Procurement Code obviously has no bearing on the restrictions placed on defendants concerning jail and correctional facilities in other states.

Illinois Antitrust Act

Defendants next contend that the noncompetition agreement is an illegal "horizontal" market and customer allocation agreement which constitutes a 
per
 
se
 violation of section 3(1)(c) of the Illinois Antitrust Act (740 ILCS 10/3(1)(c) (West 2000)) (Antitrust Act), which provides:

"§3.  Every person shall be deemed to have committed a violation of this Act who shall:

(1)  Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person:

* * *

c.  allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service[.]"

A "horizontal" agreement to divide markets is one that is made between competitors at the same level of the market structure (
People ex rel. Scott v. College Hills Corp
., 91 Ill. 2d 138, 151, 435 N.E.2d 463, 469 (1982)), whereas a "vertical" agreement is one between companies at different levels, such as manufacturers and distributors (
Intercontinental Parts, Inc. v. Caterpillar, Inc.
, 260 Ill. App. 3d 1085, 631 N.E.2d 1258 (1994)).  A horizontal restraint on trade is considered a 
per
 
se
 antitrust violation (
College Hills
, 91 Ill. 2d at 151, 435 N.E.2d at 469), as is any violation of section 3(1) of the Antitrust Act (740 ILCS Ann. 10/3, Bar Committee Comments -- 1967, at 15--16 (Smith-Hurd 2002)).

It seems clear that a literal application of section 3(1)(c) of the Antitrust Act would lead to the conclusion that the noncompetition agreement in this case violates the Act.  It is a contract between competitors that allocates certain territories and customers.  Indeed, it appears that section 3(1) would prohibit virtually 
all
 noncompetition agreements and covenants not to compete.  Yet there is an extensive body of case law which has established certain well-accepted principles concerning restrictive covenants and noncompetition agreements.

Restrictive covenants implicate the competing principles of freedom of contract and the policy against contractual restraints of trade.  Because strict adherence to the latter policy would result in rejection of all such contracts, the courts have applied a doctrine of reasonableness in an attempt to reconcile these conflicting principles.  
Decker, Berta and Co., Ltd. v. Berta
, 225 Ill. App. 3d 24, 587 N.E.2d 72 (1992).  Thus, while contracts in general restraint of trade are ordinarily held to be void (
Canfield v. Spear
, 44 Ill. 2d 49, 254 N.E.2d 433 (1969)), restrictive covenants contained in employment contracts are valid and enforceable (
Cockerill v. Wilson
, 51 Ill. 2d 179, 281 N.E.2d 648 (1972); 
Canfield
, 44 Ill. 2d 49, 254 N.E.2d 433; 
Abel v. Fox
, 274 Ill. App. 3d 811, 654 N.E.2d 591 (1995)), as are those ancillary to the sale of a business (see 
Sheehy v. Sheehy
, 299 Ill. App. 3d 996, 702 N.E.2d 200 (1998); 
Hamer Holding Group, Inc. v. Elmore
, 202 Ill. App. 3d 994, 560 N.E.2d 907 (1990); 
Russell v. Jim Russell Supply, Inc.
, 200 Ill. App. 3d 855, 558 N.E.2d 115 (1990)), so long as the restrictions are reasonable (see 
Canfield
, 44 Ill. 2d 49, 254 N.E.2d 433; 
Sheehy
, 299 Ill. App. 3d 996, 702 N.E.2d 200).  Similarly, the federal courts, in interpreting the Sherman Anti-Trust Act (15 U.S.C. §1 1997), have stated:

"One problem presented by the language of §1 of the Sherman Act is that it cannot mean what it says. *** [R]ead literally, §1 would outlaw the entire body of private contract law.  Yet it is that body of law that establishes the enforceability of commercial agreements and enables competitive markets -- indeed, a competitive economy -- to function effectively."  
National Society of Professional Engineers v. United States
, 435 U.S. 679, 688, 55 L. Ed. 2d 637, 648, 98 S. Ct. 1355, 1363, (1978); see also 
Syntex Laboratories, Inc. v. Norwich Pharmacal Co.
, 315 F. Supp. 45, 56 (S.D.N.Y. 1970) ("It is hornbook law that a covenant not to compete ancillary to the sale of a business (or a part of a business), when reasonably limited as to time and territory, does not fall within the prohibitions of the Sherman Act.").

We believe that the approach taken by the federal courts in construing federal antitrust law should be adopted by this court in interpreting section 3(1)(c) of the Illinois Antitrust Act, for three reasons.  First, despite the fact that the Antitrust Act was enacted in 1965, our research has failed to disclose a single case holding that noncompetition agreements are 
per
 
se
 violations of the Act.  Instead, Illinois courts have consistently evaluated such agreements on a case by case basis and have deemed them enforceable or unenforceable based on the reasonableness of their terms.  See 
e.g.
, 
Cockrill
, 51 Ill. 2d 179, 281 N.E.2d 648; 
Canfield
, 44 Ill. 2d 49, 254 N.E.2d 433; 
Sheehy
, 299 Ill. App. 3d 996, 702 N.E.2d 200; 
Russell
, 200 Ill. App. 3d 855, 558 N.E.2d 115.  While not conclusive, this substantial body of precedent strongly suggests that noncompetition agreements are not prohibited by the Act.

Second, section 11 of the Antitrust Act states that where the wording of the Act is identical or similar to federal antitrust law, federal court decisions should be used as a guide in construing the Act.  740 ILCS 10/11 (West 2000).  As defendants correctly note, the 
per
 
se
 violations listed in section 3 of the Act have no direct counterpart in federal law.  Nevertheless, the committee comments to section 11 note that "what it really intended is that the Illinois Act will be given a construction which keeps it consistent with the Sherman Act ***.  ***  
The proponents of Section 11 clearly intended that the new Illinois Act would not make conduct unlawful which is lawful under federal law.
"  (Emphasis added.)  740 ILCS Ann. 10/11, Bar Committee Comments -- 1967, at 71--72 (Smith-Hurd 2002).  In light of federal precedent, interpreting the Illinois Antitrust Act as prohibiting noncompetition agreements would indeed "make conduct unlawful which is lawful under federal law." 

Third, the committee comments to section 3(2) of the Act specifically address the type of agreement at issue in the case:

"Reasonably limited ancillary restraints have been held lawful on the basis that any adverse effect on competition is limited both in scope and duration and other valid business purposes or desirable competitive consequences are secured or enhanced.  It seems clear, therefore, that truly ancillary covenants, such as a seller's reasonably limited agreement not to compete in connection with the sale of a business, would not be proscribed by the '
per
 
se
' provisions of Section 3(1) relating to allocation of customers or territories.  All covenants or restrictions which are truly ancillary to an otherwise proper business purpose may have their legality tested under the unreasonable restraint of trade provisions in Section 3(2) and if found to be truly ancillary and reasonably limited, should be held lawful under that section."  740 ILCS Ann. 10/3(2), Bar Committee Comments -- 1967, at 18 (Smith-Hurd 2002).

Accordingly, we find that the noncompetition agreement entered into by the parties in this case is not a 
per
 
se
 violation of section 3(1)(c) of the Illinois Antitrust Act.  We therefore turn to a consideration of the reasonableness of the agreement.

Reasonableness of the Noncompetition Agreement

Restrictive covenants and noncompetition agreement are evaluated differently depending upon whether they derive from an employment relationship or are ancillary to the sale of a business. Courts impose a less stringent test of reasonableness on covenants ancillary to the sale of a business than on those in employment contracts because of the difference in the nature of the interests protected.  
Central Water Works Supply, Inc. v. Fisher
, 240 Ill. App. 3d 952, 608 N.E.2d 618 (1993).  Covenants ancillary to employment contracts protect the employer from an employee's misuse of proprietary information and from possible loss of customers with whom the employer has a near-permanent relationship.  A noncompetition agreement ancillary to the sale of a business protects the good will purchased by the buyer, ensuring that "the former owner will not walk away from the sale with the company's customers and goodwill, leaving the buyer with an acquisition that turns out only to be chimerical."  
Central Water Works
, 240 Ill. App. 3d at 957, 608 N.E.2d at 622; see also 
Hamer Holding Group
, 202 Ill. App. 3d 994, 560 N.E.2d 907.  In addition, the bargaining power of the parties to the sale of a business is not as uneven as it generally is in an employer/employee relationship.  
Howard Johnson & Co. v. Feinstein
, 241 Ill. App. 3d 828, 609 N.E.2d 930 (1993).

Although no specific test has been established for determining whether a noncompetition agreement is ancillary to the sale of a business, courts addressing this issue generally focus on facts demonstrating the intent of the parties to protect the integrity of the sale, such as requiring execution fo the agreement as a condition precedent to the sale, and identifying the agreement as a necessary closing document.  See 
Hamer Holding
 
Group
, 202 Ill. App. 3d 994, 560 N.E.2d 907; 
Howard Johnson
, 241 Ill. App. 3d 828, 609 N.E.2d 930.  In this case, the stock purchase agreement required execution and delivery of the noncompetition agreement at closing, and made performance of that obligation a condition precedent to the sale.  Therefore, we find that the noncompetition agreement was ancillary to the sale of a business.  This finding also resolves defendants' claim that the noncompetition agreement is invalid because plaintiffs failed to prove the existence of a protectable interest.  "In the sale of a business, the interest to be protected is the value of the goodwill that is purchased."  
Central Water Works
, 240 Ill. App. 3d at 957, 608 N.E.2d at 622.  Goodwill is the advantages a business has over competitors as a result of its name, location and reputation.  It is a sufficient interest to justify a restrictive covenant and the protection of injunctive relief.  See 
Russell
, 200 Ill. App. 3d 855, 558 N.E.2d 115; see also 
Weitekamp v. Lane
, 250 Ill. App. 3d 1017, 620 N.E.2d 454 (1993).

The enforceability of a noncompetition agreement ancillary to a sale of a business depends on the reasonableness of its terms.  The restrictions imposed, in terms of time, geographical scope and activity, must not be greater than necessary to protect the buyer.  
Howard Johnson
, 241 Ill. App. 3d 828, 609 N.E.2d 930.  In addition, the agreement must not be oppressive to the seller or injurious to the general public.  
Sheehy
, 299 Ill. App. 3d 996, 702 N.E.2d 200; 
Decker
, 225 Ill. App. 3d 24, 587 N.E.2d 72.

Geographic Scope

In determining the reasonableness of the geographic scope of a noncompetition agreement, the courts of this state have indicated that it can cover only that territory to which the goodwill extends (
Sheehy
, 299 Ill. App. 3d 996, 702 N.E.2d 200; 
Russell
, 200 Ill. App. 3d 855, 558 N.E.2d 115) or to which it might be reasonably expected to extend during the existence of the restraint (
Weitekamp
, 250 Ill. App. 3d 1017, 620 N.E.2d 454; 
McCook Window co. v. Hardwood Door Corp.
, 52 Ill. App. 2d 278, 202 N.E.2d 36 (1964)).  The noncompetition agreement at issue here prohibits defendants from providing healthcare services to jail or correctional facilities in Illinois, Wisconsin and Missouri and to Department of Corrections facilities in Indiana.  Defendants assert that the restrictions extend far beyond what is necessary to protect plaintiffs' interest.

Illinois

At the time the noncompetition agreement was executed, HPL had contracts with jails or correctional facilities in 12 Illinois counties.  Those counties were generally in the northern or central part of the State, with the exception of Williamson County in southern Illinois.  Defendants argue that the restriction covering all of Illinois is overbroad because, after subtracting the five counties in which the contracts were assigned to ACH as exempted facilities, the remaining seven counties comprised only 4,581 square miles, or 8.24% of the State.

In essence, adopting defendants' position would limit the scope of the noncompetition agreement to an area coextensive with that in which the plaintiffs were doing business.  While this analysis has been employed in the context of covenants contained in employment contracts (see, 
e.g.
, 
Midwest Television, Inc. v. Oloffson
, 298 Ill. App. 3d 548, 699 N.E.2d 230 (1998); 
Lawrence and Allen, Inc. v. Cambridge Human Resource Group, Inc.
, 292 Ill. App. 3d 131, 685 N.E.2d 434 (1997)), when considering agreements ancillary to the sale of a business, the focus is on the protection of goodwill, and where it might reasonably be expected to extend (see 
Weitekamp
, 250 Ill. App. 3d 1017, 620 N.E.2d 454; 
McCook
, 52 Ill. App. 2d 278, 202 N.E.2d 36).  In this case, HPL had established a substantial presence in Illinois, in various parts of the State.  Moreover, the goodwill HPL had established in the counties containing the exempted facilities did not vanish merely because the existing contracts were assigned to ACH, as defendants seem to assume.  Goodwill, as we have stated, is the advantage a business enjoys due to its name, location and reputation.  Although HPL was no longer doing business in the five counties of the exempted facilities, its name and reputation as a provider of healthcare services remained.  That goodwill, as well as that in the counties where HPL was doing business, was entitled to protection.  Furthermore, extending that protection to the rest of Illinois was not unreasonable in view of HPL's history of providing healthcare service to county jails, youth centers, and Department of Corrections facilities in 12 counties throughout the State.  In addition, Diane Anderson, HPL's former director of marketing, testified concerning her efforts on HPL's behalf.  According to Anderson, she attended conferences at various times over a 2½ year period to promote HPL.  Those conferences drew people from throughout the State, and Anderson felt that she had been successful in establishing goodwill with those attending.  We find that the noncompetition agreement was not overbroad with respect to Illinois.

Wisconsin

At the time of the stock purchase agreement, HPL had contracts with jail facilities in eight counties in southern and central Wisconsin.  While not as extensive as its activities in Illinois, it appears that HPL had nevertheless established a sufficient presence to generate considerable goodwill.  In addition, Anderson testified that she had attended annual and semi-annual conferences of the Wisconsin Sheriff's Association, the Wisconsin Correctional Association, and the Wisconsin Jail Administrators over a two year period.  As she had in Illinois, Anderson thought that she had been successful in promoting HPL at those conferences.  We believe that under these facts, HPL's existing goodwill in Wisconsin could reasonably be expected to extend to the remainder of the State during the life of the noncompetition agreement.  Therefore we find that the agreement was not overbroad as it concerns Wisconsin.

Missouri and Indiana

HPL had contracts with county jails in three counties in Missouri and one county in Indiana.  Subsequent to the execution of the agreement, HPL added one additional contract in Indiana.  Anderson testified that she did not go to any Missouri Sheriff's conferences, but she had once attended a National Sheriff's Association conference in Kansas City.  She had not been to any conferences in Indiana.  We find that the facts presented by this record are insufficient to support a restriction on defendants throughout the entire States of Missouri and Indiana.  The plaintiffs bear the burden of establishing that the full extent of the restraint is necessary to protect their interests.  
Hamer Holding Group
, 244 Ill. App. 3d 1069, 613 N.E.2d 1190.  While plaintiffs may have developed some measure of goodwill in those two states, the minimal level of HPL's business does not, in our opinion, make it 
reasonably
 likely that HPL's goodwill will extend throughout those states during the period of the agreement.  This is particularly so given the lack of evidence of any other efforts to develop goodwill in those states.  Accordingly, we find that the restriction prohibiting defendants from providing healthcare services in Missouri and Indiana is overbroad and unreasonable, except for the counties in which HPL has contracts.

In view of our ruling above, we deem it advisable to emphasize the procedural posture of this case.  Preliminary injunctive relief is merely intended to preserve the status quo until the court can reach the merits of the case.  In ruling on such a motion, the court does not resolve controverted factual issues, and the party seeking relief need only raise a "fair question" as to the existence to the right claimed.  
George S. May International Co. v. International Profit Associates
, 256 Ill. App. 3d 779, 628 N.E.2d 647 (1993).  Our review is limited to determining whether the trial court abused its discretion based on the facts presented at the preliminary hearing.  We make no final decision on the ultimate reasonableness of the noncompetition agreement which would bind the trial court at a hearing on the merits.  See 
U-Haul Co. of Central Illinois v. Hindahl
, 90 Ill. App. 3d 572, 413 N.E.2d 187 (1980).

Cornell Companies

Defendants also contend that the restriction against providing services to any penal or correctional facility operated by Cornell Companies is overbroad.  Cornell provides privatized correctional services for entire prisons.  They build the prisons and provide guards, administration, and medical services.  At the time of the stock purchase agreement, HPL was providing medical services to a Cornell facility in Georgia, one of 13 states in which Cornell operates.  Defendants argue that the geographic scope of the Cornell restriction "is necessarily nearly nationwide," thus far exceeding the territory where HPL's goodwill extends.  Of course, the Cornell restriction does not impose a national restraint on defendants' activities; it simply prohibits them from doing business with Cornell.  "[A] territorial limitation is not required in activity covenants designed not to prevent competition but to protect the employer's relationships with its customers."  
PCx Corp. v. Ross
, 168 Ill. App. 3d 1047, 1059, 522 N.E.2d 1333, 1340 (1988); see 
McRand, Inc. v. Van Beelen
, 138 Ill. App. 3d 1045, 486 N.E.2d 1306 (1985); see also 
Towne Oil & Technology Co. v. Buckley
, 99 Ill. App. 3d 637, 425 N.E.2d 1060 (1981) (covenants lacking geographical limitation which only restrain solicitation of former customers are not 
per
 
se
 unreasonable).  While 
PCx
, 
McRand
 and 
Towne Oil
 were employment covenant cases, we see no reason to disallow a restriction in an agreement ancillary to the sale of a business which protects the buyer's goodwill in a particular customer.  We find that the Cornell restriction was not unreasonable.

Activity restraints.

Defendants also assert that the activity restraints in the noncompetition agreement are overbroad, both in terms of the activities they restrict and the entities to which the restrictions apply.  Defendants argue, for example, that the prohibition against activities related to "managing and/or providing healthcare or healthcare related services" would prevent defendants from consulting with correctional facilities regarding potential cost savings scenarios, even though HPL has never provided such services.

As we have stated, the restrictions imposed by a noncompetition agreement must not be greater than necessary to protect the buyer.  
Howard Johnson
, 241 Ill. App. 3d 828, 609 N.E.2d 930.  The defendants are prohibited from rendering services, advice or other aide to, or becoming employed by, associated or connected with, any entity engaged in the business of managing or providing healthcare or related services to jail or correctional facilities.  Although a broad interpretation of this language would encompass 
any
 type of employment arrangement, we believe the restrictions must be construed in light of the entire agreement and its purpose.  The value of the goodwill purchased by the plaintiffs would be significantly diminished if defendants could provide their expertise in managed healthcare to a rival company.  One purpose of the agreement is to prevent such an occurrence.  On the other hand, if defendants' activities are completely unrelated to the provision of healthcare or related services, prohibiting such an arrangement would be unreasonable.  Therefore, to the extent that defendants can provide consulting services to correctional facilities while not also providing "healthcare or healthcare related services," the agreement would not bar them from doing so.  Furthermore, we decline defendants' invitation to consider various hypothetical scenarios or interpretations of the agreement that would produce absurd results.  Courts will construe a contract reasonably to avoid absurd results.  
Foxfield Realty, Inc. v. Kubala
, 287 Ill. App. 3d 519, 678 N.E.2d 1060 (1997).

We also reject defendants' claim that the agreement is overbroad because it is not limited to existing customers.  The cases cited by defendants involve employment covenants, not agreements ancillary to the sale of a business.  As we indicated previously, the latter types of agreements go beyond current customers to include territory (and customers) where existing goodwill might reasonably be expected to extend.  See 
Weitekamp
, 250 Ill. App. 3d 1017, 620 N.E.2d 454; 
McCook
, 52 Ill. App. 2d 278, 202 N.E.2d 36.  We find that the activities restricted by the noncompetition agreement are not unreasonable.

Duration

Defendants next contend that the 3-year duration of the noncompetition agreement is unreasonable.  We disagree.  The courts of this State have repeatedly upheld 3-year restrictions as reasonable (see 
Canfield
, 44 Ill. 2d 49, 254 N.E.2d 433; 
Decker
, 255 Ill. App. 3d 24, 587 N.E.2d 72; 
Hamer Holding Group
, 202 Ill. App. 3d 994, 560 N.E.2d 907; 
Towne Oil
, 99 Ill. App. 3d 637, 425 N.E.2d 1060; 
Donald McElroy, Inc. v. Delaney
, 72 Ill. App. 3d 285, 389 N.E.2d 1300 (1979)), as well as those of longer duration (see 
Cockerill
, 51 Ill. 2d 179, 281 N.E.2d 648 (five years); 
Bauer v. Sawyer
, 8 Ill. 2d 351, 134 N.E.2d 329 (1956) (five years); 
Wyatt v. Dishong
, 127 Ill. App. 3d 716, 469 N.E.2d 608 (1984) (five years); 
Rhoads v. Clifton, Gunderson & Co.
, 89 Ill. App. 3d 751, 411 N.E.2d 1380 (1980) (five years); 
Russell
, 200 Ill. App. 3d 855, 558 N.E.2d 115 (ten years)).  Diana Anderson was marketing director for HPL for approximately three years, beginning in 1999.  Based on the evidence in the record, it appears that HPL had only one contract, with Peoria County, prior to 1999.  Four contracts were added in 1999, six more in 2000, and 14 in 2001.  "[I]n a business where client development takes over a year, a restriction on competition for one to two years is reasonable because of the time it takes to cultivate a client."  
Liautaud v. Liautaud
, 221 F. 3d 981, 988 (7th Cir. 2000).  The evidence here indicates that it has taken several years for HPL to develop its client base, and we therefore find that the three year duration of the noncompetition agreement is reasonable.

Oppression of seller/injury to public.

A noncompetition agreement must not only be reasonable in terms of time, territory and activity, it also must not be oppressive to the seller, nor injurious to the interests of the general public.  
Decker
, 225 Ill. App. 3d 24, 587 N.E.2d 72; 
Russell
, 200 Ill. App. 3d 855, 558 N.E.2d 115.  Oppression or undue hardship to the seller may be found where there is an inability to earn a living, to relocate, or to use a special skill.  See 
Russell
, 200 Ill. App. 3d at 865, 558 N.E.2d at 123 and cases cited therein.  Because the seller usually includes the value of the goodwill in determining the sale price, a showing of hardship must be substantial.  
Russell
, 200 Ill. App. 3d at 865, 558 N.E.2d at 123.  Defendants complain that they "have the capacity and desire to service more customers," especially in Illinois, where they reside, and in Wisconsin.  We do not find the frustration of those desires to be a substantial hardship.  Although defendants are undoubtedly inconvenienced by the restrictions imposed by the noncompetition agreement, they entered into it willingly, and were compensated for it.  The restrictions are necessary to protect the goodwill purchased by plaintiffs, and there was no evidence that defendants were prevented from earning a living.

Defendants also assert that the noncompetition agreement injures the public because it eliminates competition, granting HPL a virtual monopoly in its market niche.  Diane Anderson testified that although various companies offered fixed-cost managed healthcare services to large correctional facilities containing over 400 beds, HPL had almost no competition when bidding on smaller jails and prisons.  However, Sally Owens, executive director of HPL, testified that at least two companies, Fimara and Centerga, provided managed healthcare services to some small facilities.  Also, according to Owens, HPL competes against local hospitals and individual doctors who provide medical services to jails.

Defendants insist, however, that the agreement has eliminated competition in the "relevant market," which they define as the provision of fixed-cost managed healthcare services to small jails of fewer than 200, or perhaps 400, inmates.  Under defendants' definition, hospitals, doctors and any other healthcare providers are not "competition" unless, like HPL and ACH, they provide fixed-cost managed healthcare.  Also, companies that do provide those services are not competition if they only serve larger facilities.

We see no reason to define the market so narrowly.  While we recognize that a sufficiently unique product may justify use of a submarket to measure an alleged restraint of trade (see 
College Hills
, 91 Ill. 2d 138, 435 N.E.2d 463), the market advocated by defendants seems artificial and designed to create the appearance of a lack of competition.  We again note that at this stage of the proceedings, plaintiffs need only raise a "fair question" as to the existence of the right claimed.  
George S. May
, 256 Ill. App. 3d 779, 628 N.E.2d 647.  Based on the facts presented thus far, we find that the noncompetition agreement does not injure the public.

Section 3(2) of the Illinois Antitrust Act

Finally, defendants contend that the noncompetition agreement violates section 3(2) of the Illinois Antitrust Act, which prohibits persons from contracting or conspiring "with one or more other persons [to] unreasonably restrain trade or commerce."  740 ILCS 10/3(2) (West 2000).  Alleged violations of this section are evaluated under the "rule of reason" test.  
College Hills
, 91 Ill. 2d 138, 435 N.E.2d 463.  Under that test, "the court must consider the actor's purpose in entering into the arrangement, the nature of the conduct, the effect on the industry and the competitive climate in the industry."  
Amalgamated Trust & Savings Bank v. Village of Glenview
, 98 Ill. App. 3d 254, 263, 423 N.E.2d 1230, 1236 (1981).  As we have discussed at some length above, the noncompetition agreement is ancillary to the sale of the business, is intended to protect goodwill, and is not unreasonable in terms of geographic scope (except for the Indiana and Missouri restraint), type of activity restrained, or duration.  It is also not oppressive to the sellers or harmful to the public.  In particular, the agreement does not unreasonably limit competition in the marketplace, which is served by other managed healthcare providers as well as by doctors and hospitals.  We find no violation of section 3(2) of the Antitrust Act.

In summary, we find that the noncompetition agreement violates the Illinois Procurement Code by prohibiting defendants from bidding on Illinois Department of Corrections contracts or other state contracts.  That aspect of the agreement is void and unenforceable, but the remainder of the agreement is severable and does not violate the Procurement Code.  The agreement is not a 
per
 
se
 violation of Section 3(1)(c) of the Illinois Antitrust Act, nor does it unreasonably restrain trade in violation of section 3(2).  The activities prohibited by the agreement are reasonable, as is the 3-year duration of the restraint.  The geographic scope of the agreement is reasonable as it applies to Illinois and Wisconsin, but is unreasonable to the extent that it excludes defendants entirely from Indiana and Missouri.  Finally, there is no undue harm to either the defendants or the public.  Accordingly, we affirm the trial court's order granting a preliminary injunction to plaintiffs, but we remand this cause with directions to modify the order in accordance with this order.

For the reasons stated above, the judgment of the circuit court is affirmed and remanded with directions.

Affirmed and remanded with directions.

BARRY and HOLDRIDGE, J.J., concur.