In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 17-1577 & 17-2215

ROBERT L. BREUDER,

*Plaintiff-Appellee,*

*v.*

BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 502, *et al.*,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-09323 — **Andrea R. Wood**, *Judge.*

ARGUED NOVEMBER 7, 2017 — DECIDED APRIL 17, 2018

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* The College of DuPage is a two-year community college in Glen Ellyn, Illinois. In 2008 the Board of Trustees of Community College District No. 502, which operates the College, hired Robert L. Breuder as the College's president. After extensions, his contract ran through 2019. But in October 2015 newly elected members of

the Board, who had campaigned on a pledge to remove Breuder, discharged him without notice or a hearing. Resolutions adopted by the Board stated that Breuder had committed misconduct. The Board did not offer him a hearing and has refused to comply with clauses in his contract covering severance pay and retirement benefits. Breuder then filed this suit, which rests not only on Illinois contract and defamation law but also on 42 U.S.C. §1983. Breuder contends that his sacking without a hearing, but with defamatory statements, deprived him of both liberty and property without due process of law.

The Board as an entity moved to dismiss the complaint, contending among other things that Breuder never had a valid contract of employment. Individual members of the Board moved to dismiss the §1983 claim on qualified-immunity grounds. The district court denied both motions. 238 F. Supp. 3d 1054 (N.D. Ill. 2017). It certified the former decision for an interlocutory appeal, which we agreed to entertain. See 28 U.S.C. §1292(b). The Board's members took an interlocutory appeal of the latter decision on the authority of *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

The Board's appeal starts with a norm of Illinois law: a governmental body whose members serve limited terms may not enter into contracts that extend beyond those terms. This rule was established in *Millikin v. Edgar County*, 142 Ill. 528 (1892), and has been applied since then, unless the state's legislature establishes a different rule. Breuder was hired in November 2008 on a contract that ran from January 2009 through June 2012. But the terms of some of the members sitting in fall 2008 expired the next spring. This meant, the Board submits, that Breuder's tenure could not run past May

2009. By the same reasoning the contract's two extensions, running through 2019, were invalid. The members elected in April 2015 (plus those elected earlier and continuing to serve) were entitled to make their own decisions about the College's presidency, the Board insists.

The difficulty with this argument is *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569 (7th Cir. 1975), which holds that legislation superseded the *Millikin* rule for community colleges. This case is almost a replay of *Hostrop*, for that dispute, too, arose from a contract giving a college president tenure beyond the date of the next election to the board. Our decision relied on 110 ILCS 805/3-32, which permits the board of a community-college district to "establish tenure policies for the employment of teachers and administrative personnel". See also 110 ILCS 805/3-42 (board may "employ such personnel as may be needed" and establish "policies governing their employment and dismissal").

None of the statutory language that led to the reasoning and result of *Hostrop* has changed since 1975, nor has any Illinois court suggested that we misunderstood state law. Illinois courts have cited *Hostrop* only once on an issue related to *Millikin*, see *Libertyville Education Association v. Board of Education*, 56 Ill. App. 3d 503, 506 (1977), and that decision suggests agreement with *Hostrop*'s conclusion.

The state legislature has limited the powers of community-college districts with respect to contracts signed after September 22, 2015. 110 ILCS 805/3-65(b) (community-college contracts may not exceed four years; severance pay is capped at one year's salary). That statute does not apply to this suit or undermine the principle of *Hostrop* that a contract with a college president may extend past the next election; to

the contrary, §805/3-65 implies that community colleges possess that power under §805/3-32. Why else limit its exercise?

According to the Board, the enactment of two other statutes, 110 ILCS 805/3B-1, 3B-2, providing rules for the handling of tenure for members of the academic faculty, implicitly nullifies whatever power exists under §805/3-32. But Illinois follows the normal understanding that one statute implicitly repeals another only when their terms are incompatible. See *U.S. Bank N.A. v. Clark*, 216 Ill. 2d 334, 344 (2005). Nothing in those statutes is incompatible with the grant of power in §805/3-32 to establish the tenure of administrative officers—to protect a bursar against arbitrary treatment with a rule requiring cause for dismissal, or to give a president a term of years in order to compete against institutions in other states fishing in the same pool of talent.

A college in Illinois would have considerable difficulty hiring a quality president if it could offer only brief employment, while colleges elsewhere were offering the five-year (or longer) contracts common for a college's top office. The Board's members serve staggered six-year terms. Two or three posts come up for election every two years—and if any member of the Board has died or resigned recently, that position also is filled at these biennial elections. If *Millikin* applies, no appointment could exceed two years, and many would face much shorter limits. But because the new statutes about academic tenure do not address the subject of academic administration, they do not affect the laws that *Hostrop* interpreted.

The Board offers two other objections to Breuder's contract. First, it observes that Illinois law permits the Board to act by majority vote, provided that a quorum is present. 110

ILCS 805/3-9. As the Board has seven members, 110 ILCS 805/3-6, this allows as few as three to take an effective decision (if only four or five appear for a meeting). But Breuder's contract provides that he may be dismissed only by the votes of at least five members, a supermajority. Second, the contract provides that the Board (or its chair) may extend the contract for one year without holding a public meeting. The Board contends that this clause violates the Illinois Open Meetings Act. 5 ILCS 120/1 to 120/7.5.

The district court concluded that both contested parts of the contract are valid. 238 F. Supp. 3d at 1061–62. The judge thought that the Board's right to determine an administrator's tenure includes a right to adjust procedures that affect that tenure, as the security of an office depends on both substantive and procedural ingredients. We need not determine whether that conclusion is correct—a subject to which state authority does not speak—because there is a difference between the validity of a *clause* and the validity of the *contract*. The Board supposes that, if any clause in a contract is improper under state law, then the contract as a whole is void. It does not furnish any authority for that belief. Courts in Illinois regularly refuse to enforce particular clauses—say, those creating penalties or imposing unreasonable restraints on competition after the end of employment—while enforcing the remainder of the contracts. See, e.g., *Health Professionals, Ltd. v. Johnson*, 339 Ill. App. 3d 1021 (2003); *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 238–39 (2008). The Board can prevail on this appeal only by persuading us that Breuder never had a valid contract. As we have rejected that contention, disputes about particular clauses may be left to resolution in the ordinary course, by

appeal from the final decision, if they turn out to affect the judgment (as these clauses may not).

This brings us to the second appeal. Public officials are entitled to qualified immunity from damages under §1983 unless they transgress clearly established law. See, e.g., *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (collecting decisions). The Board's members contend that the validity of Breuder's contract was at least uncertain, so that they could not have violated any clearly established rule. There are two problems with this contention.

The first is that, when discharging Breuder without giving him an opportunity for a hearing, the Board issued a statement declaring that he had committed misconduct. *Codd v. Velger*, 429 U.S. 624 (1977), holds that even a person who has no property interest in a public job has a constitutional entitlement to a hearing before being defamed as part of a discharge, or at a minimum to a name-clearing hearing after the discharge. See also *Wisconsin v. Constantineau*, 400 U.S. 433 (1971). The Board has not offered that opportunity to Breuder, and the members insist that they need not do so. The law is clearly established against them.

The second is that a hearing is required whenever the officeholder has a "legitimate claim of entitlement", *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), to keep the job. Breuder, who had a written contract for a term of years, assuredly had a legitimate *claim* of entitlement to have the Board honor its promise. The claim may have failed in the end, but that did not eliminate the claim's existence.

To see this, consider a situation in which a member of the philosophy faculty is employed under a contract forbidding

discharge except for misconduct or the elimination of the whole department. (That's a standard term of a contract for academic tenure.) Imagine the Board saying: "You have committed misconduct; therefore your tenure has ended; since you no longer have tenure, we need not offer you a hearing at which we have to demonstrate that misconduct occurred." The Supreme Court clearly established in *Roth* and its many successors that this maneuver won't work. A hearing is required to establish whether misconduct occurred. Just so here. The Board believes that Breuder's contract was invalid, making him an at-will employee (just like the teacher in our example), or that the contract could be cancelled for misconduct. But *whether* the contract was valid was subject to legitimate debate, and a hearing would have allowed Breuder to articulate his position and insist that the contract be enforced. Both the duration of Breuder's tenure and the existence of misconduct (essential to discharge him early, if the contract is valid) were debatable subjects. The members who refused even to listen to him violated his clearly established rights.

A college may well be entitled to fire any employee summarily, as long as it is prepared to pay off the contract's remaining years or whatever damages are established in state litigation. Cf. *Mid-American Waste Systems, Inc. v. Gary*, 49 F.3d 286 (7th Cir. 1995). That's how the tenure of college football coaches ends, and it is hard to see why college presidents would be immune to the same procedure. But the Board and its members insist that they don't owe Breuder one cent, and they have not contended that the process due for a summary termination is the opportunity to sue in state court. When the decision is made by a body's governing board, it would be hard to contend that the action is random

and unauthorized for the purpose of *Parratt v. Taylor*, 451 U.S. 527 (1981), and its successors.

The Board's members don't identify a lack of clarity in the rules established by *Roth*, *Codd*, and similar decisions. Instead they deem these rules inapplicable. They maintain that the statements issued in connection with Breuder's discharge weren't defamatory as a matter of Illinois law because they asserted opinions rather than facts (or that they have a First Amendment defense because Breuder is a public figure). They tell us that before acting they received a legal opinion that Breuder's contract was invalid under *Millikin*. They have not put a copy of this opinion into the record (they rely instead on a memorandum to the board, by an unnamed author, summarizing conclusions reached by some other anonymous person), so they cannot present an advice-of-counsel defense, but they maintain that they were entitled to rely on this advice nonetheless. Yet these contentions do not undermine the clarity of the legal rules about when people are entitled to hearings. They may provide defenses to claims based on state law, or perhaps an opportunity to sue a lawyer for malpractice, or perhaps highlight issues that might have been pursued at a hearing before the Board, but they do not diminish the strength of Breuder's constitutional opportunity for a hearing.

This wraps up the issues presented by the appeals certified under §1292(b) or authorized by the invocation of qualified immunity. The individual appellants ask us to go on and decide whether Breuder has a good defamation claim under Illinois law. They contend that "pendent appellate jurisdiction" permits us to act across the board because all issues are "inextricably intertwined" in the sense that all arise

from Breuder's discharge. That approach, if followed, would pretty much extinguish the final-judgment requirement of 28 U.S.C. §1291. The Supreme Court has told us that interlocutory appeals complicate and delay the administration of justice, and the category of permissible appeals should not be expanded. See, e.g., *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009). And it has thrown cold water on "pendent appellate jurisdiction" in particular. *Swint v. Chambers County Commission*, 514 U.S. 35, 43–51 (1995). Although *Swint* did not kill the doctrine—it survived in *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997), at least with respect to Presidents—*Swint* concluded that the doctrine must be strictly limited to avoid undermining the discretion that §1292(b) gives to district judges and appellate judges. See also *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1714 (2017). Extending the doctrine to allow state-law claims to receive interlocutory review any time a constitutional claim permits a qualified-immunity appeal would do far too much damage to both §1291 and §1292(b). We decline the invitation.

On the subjects properly before us, the district court's decisions are affirmed. Other matters may be reviewed on appeal from the final decision. Appeal No. 17-1577 is dismissed for lack of jurisdiction to the extent that appellants seek to present any issues beyond their request for qualified immunity.